**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FATTIMA U. LAGAYAN<br>605 LINCOLN STREET<br>ROCKVILLE, MD 20850<br><br>         Plaintiff,<br><br>    v.<br><br>MUSTAFA ODEH<br>3650 S. GLEBE ROAD<br>UNIT 1148<br>ARLINGTON, VA 22202<br><br>SAMA ATALLAH<br>3650 S. GLEBE ROAD<br>UNIT 1148<br>ARLINGTON, VA 22202<br><br>    AND<br><br>LAMA ODEH<br>KINGDOM OF JORDAN<br><br>         Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Fattima Lagayan ("Plaintiff"), by and through her undersigned attorneys, brings this complaint against Mustafa Odeh, Sama Atallah, and Lama Odeh (collectively, "Defendants") and hereby states and alleges the following:

**INTRODUCTION**

1.      Plaintiff brings this action to recover damages in redress of injuries caused by Defendants' illegal actions in trafficking her into the United States, subjecting her to work at an illegal wage, and illegally withholding her pay for the entirety of the four-month period she worked in the United States, as well as for an additional four months prior to her arrival here.

2.      Defendants trafficked Plaintiff into the United States for the purpose of subjecting her to involuntary servitude.  In doing so, they deceived her as to the purpose of her travel to this country.

3.      Even before Plaintiff arrived in this country, Defendants confiscated and held her passport.  They exploited her lack of English skills and knowledge of the United States, as well as her complete isolation, to manipulate and control her.  Defendants forbade Plaintiff from leaving their home or interacting with anyone who might have assisted her.

4.      Defendants forced Plaintiff to work without pay, cooking and cleaning and taking care of their five-year-old son, every day for four months, from early in the morning to late at night, roughly sixteen hours a day, seven days a week.  She received no breaks for vacation, sick leave, or personal time, and was forced to take her meals as she worked on domestic tasks.  Once a week, they required her to care for their child overnight.  On those nights she barely slept, and suffered headaches and illness.

5.      Ultimately, Plaintiff fled Defendants' house in the middle of the night, aided by a friend she had met while attending religious services.

6.      Plaintiff thus brings this action for damages caused by Defendants' violations of, inter alia, the Trafficking Victims Protection Act, 18 U.S.C. §§ 1590, *et seq.* ("TVPA") and the Ku Klux Klan Act, 42 U.S.C. § 1985(3).  She also seeks damages for Defendants' failure to pay

her the statutory minimum wage in violation of the Fair Labor Standards Act 29 U.S.C. § 201 *et seq.*, ("FLSA") and the District of Columbia Minimum Wage Law, D.C. Code §§ 32-1001 *et seq.* ("DCMWL"), as well as recovery for violations of District of Columbia law, including civil conspiracy, unjust enrichment and quantum meruit, fraudulent inducement, false imprisonment, and battery.

### JURISDICTION AND VENUE

7.     Original jurisdiction over this matter in federal court is proper pursuant to 28 U.S.C. §§ 1331 and 1367, the FLSA, 29 U.S.C. § 216(b), the TVPA, 18 U.S.C. § 1595, and the Ku Klux Klan Act, 42 U.S.C. § 1985(3).

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred within the District of Columbia, where Plaintiff was employed at Defendants' then-residence, located at 425 L Street NW, Apartment 716, Washington, DC 20001-2793.

9.     The Court has personal jurisdiction over Defendants Mustafa Odeh and Sama Atallah under Federal Rule of Civil Procedure 4(k) and D.C. Code Ann. § 13-423(a)(3) because their actions within the District of Columbia, which occurred at Defendants' previous residence in the District of Columbia, which was also Plaintiff's place of employment and alleged injury, injured Plaintiff within the District of Columbia.

10.     The Court has personal jurisdiction over Defendant Lama Odeh under Federal Rule of Civil Procedure 4(k) and D.C. Code Ann. § 13-423(a)(3) as a co-conspirator to the trafficking of Plaintiff, where the actions of her agents and fellow Defendants occurred in the District of Columbia and caused Plaintiff's injuries there.

## PARTIES

11.    Plaintiff is a resident of Maryland.

12.    Defendants Mustafa Odeh and Sama Atallah are residents of the Commonwealth of Virginia and reside at the captioned address in Arlington, Virginia.  On information and belief, they are citizens of the Kingdom of Jordan.

13.    On information and belief, Defendant Lama Odeh is a citizen and resident of the Kingdom of Jordan.

## FACTS

### Early Life and Trafficking

14.    Plaintiff was born on December 30, 1989 in Cotabato City, Philippines, as the fourth of thirteen children.  She began working in the fields and assisting her family financially at age ten.

15.    At age twelve, Plaintiff left school to work full-time.  While still living in the Philippines, Plaintiff was employed as a domestic worker.

16.    In 2009, Plaintiff was recruited, along with several other young women, to work abroad.

17.    In 2010, Plaintiff successfully applied for a passport from the Philippine government.  The agency that recruited her to work abroad paid for the passport, but Plaintiff was required to reimburse them by sending the agency her first three months of wages.  Plaintiff gave her passport to the recruiting agency shortly before leaving the Philippines.

18.    In February 2011, the agency smuggled Plaintiff and a group of young women out of the Philippines by boat from Zamboanga City.  The group spent three days on a small,

cramped, and dirty boat, where they were forced to crouch on the floor as the roof was too low to stand or even fully sit up.

19.     The boat took Plaintiff and the other women to Malaysia.  Plaintiff disembarked from the boat and walked through shallow water to a house on the shore.  Trucks were waiting at the house.  Men ordered Plaintiff and the other women onto the trucks.  During this period, Plaintiff did not have access to her passport.

20.     As the trucks drove away from the house, Plaintiff heard the driver say to a man in the front seat that it was good they had taken the route they had, because there were police on an alternate road.

21.     The trucks eventually took Plaintiff and the other women to a hotel.  Plaintiff spent several days there.  There were guards in the hotel, and the women were told not to go outside because there were police in the area.

22.     After several days, another truck took Plaintiff and the other women to a small airport, where they boarded a flight to Bahrain.  When Plaintiff boarded that flight, she received her passport, which had been marked with a Philippine exit stamp and Malaysian entry stamp.

23.     Plaintiff's flight arrived in Bahrain, where she and the other women changed planes but did not go through customs or exit the airport.

24.     Plaintiff and the other women then boarded another plane and flew to Jordan, where a man came and took their passports.  That individual returned the passports, and Plaintiff passed through customs, where her passport was checked but not stamped.

25.     After Plaintiff and the other women left the airport in Jordan, they were taken by truck to a building holding the offices of the recruiting agency that had smuggled Plaintiff out of the Philippines.  She was told not to go outside.

26.     Plaintiff then signed a contract with the agency, understanding that it obligated her to work for whomever the agency placed her with for two years.  Plaintiff was not given an opportunity to read the contract and did not receive a copy.  After two days, a man came to the agency, and Plaintiff was told that she would be working for him.  He took her back to his home but returned her to the agency after two days because she did not speak English.

**Plaintiff's Work for Defendant Lama Odeh**

27.     Soon after, Defendant Lama Odeh came to the agency.  Plaintiff was instructed to go with Defendant Lama.  Plaintiff believed that her contract with the agency required her to work for Defendant Lama for two years, and that she would be paid only $200 (USD) per month for the duration of her employment.

28.     Defendant Lama took Plaintiff's passport at the agency building and held it for the entire time Plaintiff worked for her.

29.     Plaintiff worked for Defendant Lama from March 2011 to early November 2012. For the first three months of her employment, Defendant Lama sent Plaintiff's wages directly to the recruiting agency.  From roughly June 2011 through July 2012, Defendant Lama paid Plaintiff the equivalent of $200 (USD) per month.  Plaintiff did not receive that money directly. Rather, Defendant Lama wired Plaintiff's wages every three months to Plaintiff's parents in the Philippines.

30.     While in Defendant Lama's employ, Plaintiff woke every day at 4 a.m. to prepare breakfast for Defendant Lama's four children.  Plaintiff was then expected to care for the youngest child while cleaning the house, washing clothes by hand, and cooking dinner.  She worked until 10 or 11 p.m. each day.  She received no breaks for meals, frequently working as she ate.

31.     Plaintiff did not receive a single day off while she worked for Defendant Lama.

32.     Defendant Lama was physically, emotionally, and verbally abusive toward Plaintiff on a daily basis.  Defendant Lama slapped and pinched Plaintiff.  She called her an "animal" and verbally abused Plaintiff in front of guests to make them laugh.

33.     Defendant Lama also threatened Plaintiff's physical safety, and even threatened her life.  On multiple occasions, Defendant Lama threatened to kill Plaintiff because Defendant Lama felt as though Plaintiff had not performed a domestic task adequately.

34.     Defendant Lama always locked the doors to her house, and Plaintiff was told not to go outside.  Defendant Lama told Plaintiff that she couldn't escape, and if she tried to do so, she would be forcibly returned to the house.  Twice Plaintiff snuck out through a window and went to the agency to complain about the abuse from Defendant Lama, and to ask for a new position.  However, agency personnel ignored her complaints and called Defendant Lama, who came and returned Plaintiff to Defendant Lama's home.

35.     After Plaintiff's second escape, Defendant Lama asked Plaintiff if she wanted to work for Defendant Lama's brother in the United States.  Plaintiff said no.  Defendant Lama asked twice more, and each time Plaintiff refused.  Around that time, without explanation, Defendant Lama stopped paying Plaintiff or Plaintiff's parents.

36.     In October 2012, Defendant Lama told Plaintiff that the entire family would be traveling to the United States with her brother for a month, and that Plaintiff was to accompany the family on that trip.  Defendant Lama instructed Plaintiff to apply for a B2 visa so that she could travel to the United States to work for the family during their visit.

**Plaintiff's Work for Defendants Mustafa Odeh and Sama Atallah**

37.     About a week before Plaintiff was scheduled to travel to the United States with Defendant Lama and her family, Defendant Lama told Plaintiff that Plaintiff would instead be traveling to the United States alone to work for Defendant Mustafa Odeh.  Defendant Lama told Plaintiff that she would work for Defendant Mustafa for only one month.  Plaintiff did not want to go, but felt that she was required to do so.

38.     In November 2012, Defendant Lama ordered a car to take Plaintiff to the airport in Jordan.  When they arrived at the airport, the driver gave Plaintiff her passport.  She flew to Dubai, where Defendant Mustafa was waiting for her.  At the airport in Dubai, he informed her that she would be working for him for seven months.  He said that he would pay Plaintiff at the same rate Defendant Lama had plus a little more, although he did not specify her actual salary or the other terms of her employment.

39.     Defendant Mustafa took and held Plaintiff's passport on the flight from Dubai to the United States.  He returned it to her as they went through customs and immigration, but then took it back before they exited the airport.  Ultimately, Defendants Mustafa and Atallah kept Plaintiff's passport hidden in their home for the entirety of Plaintiff's work for them.

40.     Plaintiff and Defendant Mustafa arrived in the United States together on November 5, 2012, and she was taken directly to Defendant Mustafa's then-residence, which is located, on information and belief, at 425 L Street NW, Apt 716, Washington, DC 20001-2793. She began work immediately.

41.     From November 5, 2012 to March 5, 2013, Plaintiff worked for Defendant Mustafa and his wife, Defendant Atallah, as a live-in domestic worker.

42.     During that time period, Defendants Mustafa and Atallah lived in the apartment, along with their infant child and Defendant Mustafa's parents.

43.     While Plaintiff worked for Defendants Mustafa and Atallah, she was required to work every day of the week, with no days off.

44.     Plaintiff would begin work each day at 7 or 8 a.m., assisting Defendant Mustafa's father in preparing breakfast.  Around 9 a.m., she would feed Defendants Mustafa and Atallah's infant child while the family ate breakfast.  Around 9:30 or 10 a.m., she would wash the breakfast dishes, eating her own breakfast as she did so.  Plaintiff was required to wash dishes by hand because Defendants would not allow her to use their dishwasher.  After breakfast, she would watch the baby until he took a nap around 11 a.m.  She would then massage Defendant Mustafa's mother's feet and apply medication, then clean and do laundry for the three to four hours that the child napped.  Around 3 p.m., the baby would wake, and she would care for it while doing other household tasks and assisting Defendant Mustafa's father in preparing dinner, a process that took several hours, as the Odeh family ate large, multi-course meals.  After dinner, which began daily at 9 p.m., Plaintiff would clean the house and then go to bed around 10 or 11 p.m.

45.     On Fridays, Defendant Atallah, who was studying in a medical training program, left early and stayed overnight at the hospital where she worked.  On those days, Plaintiff woke at 5 a.m. to care for the baby.  The rest of her daily schedule remained the same, except that she kept the baby in her bed overnight, waking several times during the night to care for it.  On Friday nights, she got very little sleep and often felt ill on the following day.  Plaintiff informed Defendants and Defendant Mustafa's parents about her illness, but she was ignored.

46.     Plaintiff was prohibited from talking to anyone outside the family or leaving the apartment by herself.  She was not permitted time to eat, and had to take her meals while doing her domestic work.  She received no time off.  She was allowed to contact her family in the Philippines only once a month for ten to thirty minutes.  Whenever the Odeh family had guests, Plaintiff had to take care of the guests and provide them with food.  While the Odeh family entertained, Defendant Mustafa's father would often verbally abuse her.

47.     Plaintiff was required to accompany the Odeh family to a mosque on a weekly basis, but was otherwise not permitted to leave the apartment building, except to go to the grocery store to buy food, and was never allowed out alone.  Plaintiff was never alone in the apartment, as even if Defendants left, Defendant Mustafa's parents were always home with her.

48.     Plaintiff could not have left the Odeh family's apartment building on her own in any event, because the elevator to Defendants' floor required a key card to operate, and Plaintiff did not have the key card.

49.     Defendants also specifically instructed Plaintiff not to talk to anyone, particularly other Filipinos.  Plaintiff was afraid to violate Defendants' rules because of her experience in Jordan, where she was returned to Defendant Lama when she tried to complain about her treatment.  She did not know precisely what would happen if she violated the rules, but she understood them as threats.  She had no understanding of the United States legal system, where she was, or how to navigate the city.  She did not speak English.  She had no access to her passport and did not know what her immigration status was.  She feared that if she tried to talk to a police officer, she would be arrested and deported.

50.     When Plaintiff first began working for him, Defendant Mustafa asked Plaintiff if she wanted to be paid monthly or have him hold the money for her for the length of her

employment.  She requested monthly payment, but he said he would hold onto her wages, as it would be "safer" for him to do so.

51.     After she had been working for Defendants Mustafa and Atallah for a few months, Plaintiff had a brief phone call with her father.  On that call, Plaintiff learned that her father was ill, had been hospitalized, and needed money for treatment.  Plaintiff informed Defendants Mustafa and Atallah of the situation and asked them for the money they owed her so that she could send it home to her parents.  They told her repeatedly that they would give her the money she was owed "tomorrow," but never did.  After approximately four days of telling her that she would be paid "tomorrow," they then said that they would pay her what she was owed when they returned to Jordan.  Plaintiff was never able to provide money for her father's treatment and her parents were forced to take out loans to cover the cost.

52.     Due to Defendants Mustafa and Atallah's repeated refusal to pay Plaintiff for her months of work, Plaintiff came to believe that Defendants would never pay her for her labor.

**Escape from Defendants Mustafa and Atallah**

53.     Around that time, during a trip to the mosque, Plaintiff gained the attention of a Filipina woman, Sofia Maulana.  Ms. Maulana tried to talk to Plaintiff, but Plaintiff was scared because Defendant Mustafa was watching her and she was afraid of what would happen if she broke his rule forbidding her from speaking with outsiders.  Ms. Maulana recognized that Plaintiff was afraid, and secretly wrote her name and phone number on a napkin.  She slipped the napkin to Plaintiff while Defendant Mustafa was not watching.

54.     After a week or two, emboldened by Ms. Maulana's gesture and increasingly concerned about her father's health, Plaintiff called Ms. Maulana late at night on the Odeh's house phone and asked for help.  The two arranged for Ms. Maulana to come to the apartment

late at night, while the family was sleeping.  Plaintiff wanted to leave at night both because she was afraid that Defendants would stop or threaten her if she tried to leave while they were awake, but also because she did not want to leave at a time when the baby would be unattended.

55.     Late one night in March 2013, Plaintiff packed her possessions and slipped out to meet Ms. Maulana.  She had to wait in the hallway for someone else to come along and use the elevator, but someone did and she successfully escaped the building.

56.     Shortly after her escape, Defendant Lama called Plaintiff's mother in the Philippines and asked where she was.  When Plaintiff learned of this conversation, she was frightened and afraid that Defendants would have her arrested.

**Summary**

57.     To date, Defendants have not compensated Plaintiff for her time worked in the United States or for the last four months of her work in Jordan.

58.     Pursuant to 29 C.F.R. § 516 and D.C. Code § 32-1008, Defendants are required to maintain a record of each hour worked, each day worked, and each week worked by any employee.

59.     The exact number of hours Defendants required Plaintiff to work will be known only through discovery.  Plaintiff was constantly on-call and worked nearly round the clock for Defendants in the District of Columbia between November 5, 2012 and March 5, 2013.  Defendants set Plaintiff's working hours, demanding that she work approximately three times a full-time workload.

60.     At all times relevant to this action, Defendants failed to comply with the notice and posting requirements of D.C. Code § 32-1009 and 29 C.F.R. § 516.4.

61.     The actions taken by Defendants, elaborated in the preceding paragraphs, demonstrate that Defendants acted with evil motive, actual malice, deliberate violence or oppression, intent to injure or willful disregard for Plaintiff's rights, and that Defendants' conduct was outrageous, grossly fraudulent, and/or reckless towards Plaintiff's safety.

## COUNT I

**VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT:
TRAFFICKING WITH RESPECT TO INVOLUNTARY SERVITUDE
OR FORCED LABOR, 18 U.S.C. § 1590
(Against All Defendants)**

62.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

63.     Defendants knowingly transported Plaintiff from Jordan to the United States and harbored her in the home of Defendants Mustafa and Atallah for the purpose of obtaining her forced, coerced, and involuntary labor in violation of 18 U.S.C. § 1590.

64.     Plaintiff is entitled to bring a civil claim against Defendants for their misconduct under 18 U.S.C. § 1595.

65.     As a direct and proximate result of Defendants' actions, Plaintiff suffered harm in that she was taken to this country against her will and forced to work long hours without pay.

66.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## COUNT II

**VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT:
FORCED LABOR, 18 U.S.C. § 1589
(Against All Defendants)**

67.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

68.     Defendants knowingly obtained Plaintiff's forced and coerced labor through a scheme, plan, and pattern of enforced isolation, through legal coercion manifested by, inter alia, the confiscation of her passport, and threats, both express and implied, all in violation of 18 U.S.C. § 1589.

69.     Plaintiff is permitted to bring a civil claim against Defendants for their misconduct under 18 U.S.C. § 1595.

70.     Defendants confined Plaintiff in their home, did not allow her to leave the home without their direct supervision, and took advantage of her lack of English language skills or awareness of life in the United States to prevent her from making contact with anyone outside of Defendants' home.

71.     Defendants knowingly obtained Plaintiff's labor services through fraudulent promises that she would be in the country for only one month; that she would be there with her originally employer, for whom she believed herself to be contractually obliged to work; and that she would be paid for her services.

72.     Defendants forced Plaintiff to labor exceedingly long hours each and every day, far in excess of any normal full-time workload.

73.     Defendants knowingly benefitted from, or operated in reckless disregard of, the fact that Plaintiff's labor was obtained through the forced and coercive means discussed above.

74.     As a direct and proximate result of Defendants' actions, Plaintiff suffered harm in that she was taken to this country against her will and forced to work long hours without pay.

75.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## COUNT III

**VIOLATION OF THE 13th AMENDMENT TO THE UNITED STATES
CONSTITUTION AND THE TRAFFICKING VICTIMS PROTECTION ACT:
INVOLUNTARY SERVITUDE, 18 U.S.C. § 1584
(Against All Defendants)**

76.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

77.     Defendants knowingly and willfully held Plaintiff in involuntary servitude through both express and implied threats and through legal coercion manifested by, inter alia, the confiscation of her passport.

78.     Defendants forced Plaintiff to labor exceedingly long hours each and every day, far in excess of any normal full-time workload.

79.     Through such action, Plaintiff was subject to involuntary servitude prohibited by the Thirteenth Amendment to the United States Constitution and the TVPA, 18 U.S.C. § 1584.

80.     Plaintiff is entitled to bring a civil claim against Defendants for their misconduct under the private cause of action implied under the Thirteenth Amendment to the United States Constitution and the TVPA, 18 U.S.C. § 1595.

81.     As a direct and proximate result of Defendants' actions, Plaintiff suffered harm in that she was taken to this country against her will and forced to work long hours without pay.

82.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## COUNT IV

**VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT:
UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS
IN FURTHERANCE OF TRAFFICKING, 18 U.S.C. § 1592
(Against All Defendants)**

83.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

84.     Defendants knowingly removed, confiscated, concealed, and possessed Plaintiff's travel documents when Defendant Lama took and concealed her passport for the entirety of her work in Jordan and when Defendants Mustafa and Atallah took and concealed her passport and U.S. visa upon her arrival in this country.   Defendants knowingly removed, confiscated, concealed, and possessed Plaintiff's passport and documents in order to prevent or restrict her liberty to move or travel for the purpose of holding her in involuntary servitude and subjecting her to forced labor, in violation of 18 U.S.C. § 1592.

85.     Plaintiff is entitled to bring a civil claim against Defendants for their misconduct under 18 U.S.C. § 1595.

86.     As a direct and proximate result of Defendants' actions, Plaintiff suffered harm in that she was forced to remain under Defendants' control against her will.

87.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## COUNT V

### VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT:
### BENEFITTING FINANCIALLY FROM TRAFFICKING, 18 U.S.C. § 1593A
### (Against All Defendants)

88.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

89.     Defendants knowingly benefitted financially and by receiving the value of Plaintiff's free round-the-clock labor.

90.     Defendants obtained this benefit through participation in a venture, the illegal trafficking of Plaintiff in the United States and seizure of her passport both prior to and during her  time in this country, which violated, inter alia, Sections 1592 and 1595(a) of the TVPA, while knowing or in reckless disregard of the fact that the venture constituted such a violation, as

demonstrated by their warnings to Plaintiff not to talk to anyone and through their use of threats and legal coercion to force Plaintiff to provide her labor free of charge.

91.     Plaintiff is entitled to bring a civil claim against Defendants for their misconduct under 18 U.S.C. § 1595.

92.     As a direct and proximate result of Defendants' actions, Plaintiff suffered harm in that she was subject to near-perpetual labor without pay.

93.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## COUNT VI

### VIOLATION OF THE 13th AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE KU KLUX KLAN ACT, 42 U.S.C. § 1985(3)
### (Against All Defendants)

94.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

95.     Defendants knowingly, willfully, maliciously, intentionally, and without justification planned and conspired together and agreed to engage in the acts detailed above to accomplish an unlawful purpose and/or accomplish acts by unlawful means, to whit, illegal trafficking of Plaintiff into the United States and subjecting her to illegal involuntary servitude.

96.     Defendants engaged in this conspiracy for the purpose of depriving Plaintiff of her right to be free of involuntary servitude as guaranteed by the Thirteenth Amendment.

97.     Defendants were motivated by racial, anti-Filipino, and/or other class-based animus, as evidenced by their abusive treatment and threats to harm Plaintiff that were premised in a stated belief that she was an "animal," beneath them, or in some other way sub-human.

98.     Defendants knowingly, willfully, maliciously, intentionally, and without justification acted by arranging for Plaintiff to fly to the United States and by keeping her in Defendant Mustafa's then-home in Washington, D.C.

99.     As a direct and proximate result of Defendants' actions, Plaintiff suffered harm in that she was forced to remain under Defendants' control against her will and was subjected to involuntary and uncompensated labor.

100.    Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## COUNT VII

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Against Defendants Mustafa Odeh and Sama Atallah)

101.    Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

102.    Plaintiff was an "employee" within the meaning of the FLSA.   29 U.S.C. § 203(e)(1).

103.    Plaintiff was a "non-exempt" employee within the meaning of the FLSA. 29 U.S.C. § 213.

104.    The FLSA requires that employers pay non-exempt employees a minimum wage equal to an amount set by Congress, which is currently $7.25 per hour. 29 U.S.C. § 206(a)(l).

105.    Defendants knowingly and willfully violated the FLSA when they failed to pay Plaintiff the statutorily mandated minimum wage pursuant to 29 U.S.C. § 206(a)(1).

106.    Defendants' actions in violation of 29 U.S.C. § 206 were willful, as shown by their repeated refusal to provide Plaintiff's requested money and their repeated statements that they would pay her certain amounts, which amounts were less than required by law.

107.     Defendants are liable to Plaintiff under 29 U.S.C. §§ 206 and 216 of the FLSA, for her unpaid minimum wage compensation plus an equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## COUNT VIII

### FAILURE TO PAY MINIMUM WAGE
### UNDER THE LABOR LAWS OF THE DISTRICT OF COLUMBIA
### (Against Defendants Mustafa Odeh and Sama Atallah)

108.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

109.     Plaintiff was an "employee" within the meaning of the D.C. Minimum Wage Act. D.C. Code § 32-1002(2).

110.     Defendants were "employers" within the meaning of D.C. Code § 32-1002(3).

111.     D.C. Code § 32-1002(a) requires that employers pay employees not falling under a statutory exception the federal minimum wage pursuant to the FLSA, plus one dollar ($1.00), for a total hourly wage of $8.25.

112.     Defendants willfully violated D.C. Code § 32-1003(a).

113.     Defendants are liable to Plaintiff under D.C. Code §§ 32-1003(a) and 32-1012(a) for her unpaid minimum wage plus an equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## COUNT IX

### CIVIL CONSPIRACY
### (Against All Defendants)

114.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

115.    Defendants agreed to engage in the acts detailed above to accomplish an unlawful purpose and/or accomplish acts by unlawful means, to whit, illegal trafficking of Plaintiff into the United States and subjecting her to illegal involuntary servitude.

116.    Defendants knowingly committed one or more overt acts in furtherance of the object of the conspiracy, including, inter alia, bringing Plaintiff into the United States under false pretenses, withholding her passport, arranging to pay her an illegal wage under the laws of the District of Columbia and the United States, and refusing to provide payment any wages owed to Plaintiff when it was requested.

117.    As a direct and proximate cause of Defendants' agreement to engage in the unlawful acts described above, Plaintiff has suffered damages in an amount to be determined at trial, to include reasonable attorney fees and costs for Defendants' wrongful conduct.

## COUNT X

### UNJUST ENRICHMENT
### (Against Defendants Mustafa Odeh and Sama Atallah)

118.    Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

119.    At Defendants' request and instigation, Plaintiff conferred the benefit of countless hours of free child care, elder care, and domestic services on Defendants from at least November 2012 to March 2013.

120.    Defendants have retained that benefit by failing to provide any compensation for the time she worked for them.

121.    Defendants' retention of this benefit conferred without paying Plaintiff the value of that benefit is unjust and inequitable, as evidence by the illegality of such conduct under the laws of the District of Columbia and the United States.

122.     Plaintiff is entitled to restitution and judgment against Defendants for their unjust enrichment in an amount to be proven at trial, including attorneys' fees and the cost of this action.

## COUNT XI

**QUANTUM MERUIT**
**(Against Defendants Mustafa Odeh and Sama Atallah)**

123.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

124.     Plaintiff is entitled to recover from Defendants because she rendered valuable services to them in the form of months of free child care, elder care, and domestic services.

125.     Defendants accepted, used, and enjoyed Plaintiff's services, as demonstrated by keeping her in their home and taking steps to prevent her leaving their service, and Defendants were reasonably notified that Plaintiff expected to be paid because they promised to pay her and she repeatedly asked to be paid.

126.     Plaintiff is entitled to recover in quantum meruit the value of the services she provided to Defendants in an amount to be proven at trial, including attorneys' fees and the cost of this action.

## COUNT XII

**FRAUDULENT INDUCEMENT**
**(Against All Defendants)**

127.     Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

128.     Defendants falsely represented to Plaintiff that (1) they intended to pay her for work performed in the United States; (2) that her work in the United States would be in the service of Defendant Lama; and (3) that her work in the United States would not exceed the

length of her original contract, such that she would be allowed to return home after a month in the United States.

129.    These false representations were material because Defendants used them to convince Plaintiff to come to the United States to work for Defendants Mustafa and Atallah. Plaintiff refused to come to the United States and work for Defendant Mustafa when asked by Defendant Lama.  It was only though lies that Defendants tricked Plaintiff into coming to the United States.

130.    Defendants knew these representations were false because (1) they had no intention of paying her; (2) they intended Plaintiff to work for Defendants Mustafa and Atallah, rather than Defendant Lama; and (3) they intended for her to remain in the United States for an extended period of time.

131.    Defendants intended these representations to deceive Plaintiff so that they could induce her work for Defendants Mustafa and Atallah for an extended period of time.

132.    Plaintiff acted in reliance on these representations when she came to the United States and worked for Defendants Mustafa and Atallah.

133.    As a direct and proximate cause of her reliance on Defendants' materially false representations, Plaintiff has suffered damages in an amount to be determined at trial, to include reasonable attorney fees and costs for Defendants' wrongful conduct.

## COUNT XIII

### FALSE IMPRISONMENT
### (Against All Defendants)

134.    Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

135.    Defendants' actions, including seizing and hiding Plaintiff's passport, not allowing her to leave Defendants' home unaccompanied, not paying her wages Defendants owed

her, thus ensuring she had no financial resources, and otherwise prohibiting her from moving freely, resulted in Plaintiff being unlawfully detained in Defendants' home.

136.    Defendants' actions restraining Plaintiff's liberty and movement were without legal justification.

137.    Defendants detained Plaintiff from November 2012 to March 2013.

138.    Defendants' imprisonment of Plaintiff was intentional.

139.    Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil motive or actual malice.

## COUNT XIV

### BATTERY
### (Against Defendant Lama Odeh)

140.    Plaintiff hereby incorporates the preceding paragraphs as if fully stated herein.

141.    Defendant Lama engaged in continuous harmful and offensive physical contact with Plaintiff, including hitting, slapping, and pinching Plaintiff on an almost daily basis during the period of Plaintiff's employment for Defendant Lama.

142.    At no time did Plaintiff consent to the above harmful and offensive physical contact by Defendant Lama.

143.    Defendant Lama's physical contact with Plaintiff was inexcusable and unjustified.

144.    As a result of Defendant Lama's physical contact with Plaintiff, Plaintiff has endured continuing pain and suffering, in addition to severe emotional distress.

145.    As a result of Defendant Lama's wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

146.   WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against

all Defendants, jointly and severally, in her favor on all counts, and grant the following relief:

a.   Damages in an amount to be calculated at trial, including, but not limited to, the full amount of Plaintiff's loss for Defendants' violation of federal laws including: trafficking with respect to peonage, slavery, involuntary servitude or forced labor in violation of 18 U.S.C § 1590; involuntary servitude in violation of 18 U.S.C. § 1584; forced labor in violation of 18 U.S.C. § 1589; unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1592; and violation of the 13th Amendment to the United States Constitution and the Ku Klux Klan Act, 42 U.S.C. § 1985(3);

b.   Plaintiff's unpaid wages, plus liquidated damages, pursuant to 29 U.S.C. §§ 206 and 216;

c.   Plaintiff's unpaid wages, plus liquidated damages, pursuant to D.C. Code §§ 32-1003(a) and 32-1012;

d.   Plaintiff's costs and attorneys' fees incurred in this action, as provided for by 29 U.S.C. §216(b) and D.C. Code § 32-1012(c);

e.   Compensation for Defendants' conspiracy to violate Plaintiff's rights;

f.   Compensation for Defendants' benefit from Plaintiff's uncompensated labor;

g.   Compensation for Defendants' fraudulently inducing Plaintiff to come to the United States and work without pay;

h.   Compensation for Defendants' imprisonment of Plaintiff;

i.   Compensation for Defendants' battery of Plaintiff;

j.   Punitive damages because Defendants acted with evil motive, actual malice, deliberate violence or oppression, intent to injure, or willful disregard for Plaintiff's rights, and because Defendants' conduct was outrageous, grossly fraudulent and/or reckless towards the safety of Plaintiff; and

k.      Any additional relief this Court sees fit.

Dated: November 4, 2015                          **ROPES & GRAY LLP**


By:   /s/ Jonathan Ference-Burke
      _____

      Jonathan Ference-Burke (D.C. Bar #1001179)
      ROPES & GRAY LLP
      2099 Pennsylvania Ave NW
      Washington, DC 20006
      Telephone: (202) 508-4600
      Facsimile:   (202) 508-4650
      jonathan.ference-burke@ropesgray.com

      Of Counsel:

      Joshua S. Levy (Massachusetts Bar #563017)*
      ROPES & GRAY LLP
      Prudential Tower
      800 Boylston Street
      Boston, Massachusetts 02199
      Telephone: (617) 951-7000
      Facsimile:   (617) 951-7050
      joshua.levy@ropesgray.com

      Martin J. Crisp (New York Bar #4230347)*
      ROPES & GRAY LLP
      1211 Avenue of the Americas
      New York, New York 10036
      Telephone: (212) 596-9000
      Facsimile:   (212) 596-9090
      martin.crisp@ropesgray.com

      *Attorneys for Plaintiff Fattima U. Lagayan*

      **Pro hac vice* application to be submitted