**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FATTIMA U. LAGAYAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-01953-APM |
| ) | |
| MUSTAFA ODEH, ET AL., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS MUSTAFA ODEH AND SAMA ATALLAH'S REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
<u>COUNTS I-VI, IX, XII, AND XIII OF PLAINTIFF'S COMPLAINT</u>**

Defendants Mustafa Odeh ("Mustafa") and Sama Atallah ("Atallah"), by counsel, hereby submit their Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Counts I-VI, IX, XII, and XIII of the Complaint ("Opposition").

**PRELIMINARY STATEMENT**

Plaintiff Fattima Lagayan's ("Plaintiff") claims for violations under the Trafficking Victims Protection Act ("TVPA"), conspiracy, fraudulent inducement, and false imprisonment against Defendants Mustafa and Atallah must be dismissed, because they are based upon unsubstantiated leaps and requested inferences that improperly try to elevate an alleged employment dispute into an egregious human trafficking case.

Tellingly, Plaintiff's Complaint is devoid of any specific allegations regarding any communication, discussion, or agreement between any of the Defendants to subject Plaintiff to coerced employment. Despite living for several years with Defendant Lama Odeh ("Lama"), and for four months in Defendants Mustafa's and Sama's home, Plaintiff cannot identify a single instance where any of the Defendants ever discussed a plan to subject Plaintiff to the conditions

1

of forced labor and involuntary servitude that she claims. This case is, simply put, an employment dispute that Plaintiff is attempting to elevate into a human trafficking case. Plaintiff is unable to assert the bare predicate allegations for her TVPA, conspiracy, fraudulent inducement, and false imprisonment claims. There is no predicate basis for the Court to allow these extraordinary and egregious claims to survive based on Plaintiff's conclusory allegations and unreasonable inferences, and therefore those counts need to be dismissed.

Defendants Mustafa and Atallah have thus moved to dismiss Counts I-VI, IX, and XII of the Complaint, asserting that the bare and conclusory allegations in the Complaint fail to meet the minimum required pleading standards and, as a result, fail to state cognizable claims for trafficking, conspiracy, and fraudulent inducement against the Defendants.[1] Plaintiff relies heavily on inference in an attempt to bridge significant gaps in her factual allegations for the material elements of these causes of action. Although the Court must accept the Complaint's factual allegations as true at this stage, "any conclusory allegations are not entitled to an assumption of truth and even those allegations pled with factual support need only be accepted to the extent that 'they plausibly give rise to an entitlement of relief.'" *Acosta Orellana v. CropLife Intern.*, 711 F.Supp.2d 81, 89 (D.C. Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 622, 679 (2009)).

Plaintiff has not alleged sufficient facts in her Complaint to establish relief under her trafficking, conspiracy, and fraudulent inducement claims that is "plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Defendants Mustafa and Atallah also moved to dismiss Count XIII for false imprisonment as untimely filed after the statute of limitations expired. Plaintiff does not oppose dismissal of Count XIII of her Complaint for false imprisonment. *See* Pl.'s Opp. 25 n. 7.

alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Here, Plaintiff's opposition to Defendants' Motion to Dismiss relies on inferences that are not reasonably drawn from the facts alleged in the Complaint, and those inferences cannot "nudge[] [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, as set forth below, Defendants Mustafa and Atallah respectfully request that this Court dismiss Counts I-VI, IX, XII, and XIII of the Complaint.

## ARGUMENT

**I.  Counts II and III of Plaintiff's Complaint Alleging Forced Labor and Involuntary Servitude in Violation of the TVPA Must be Dismissed for Failure to State a Claim.**

To survive a motion to dismiss on her claim for forced labor in violation of 18 U.S.C. § 1589, Plaintiff must sufficiently allege that Defendants knowingly obtained such labor "by means of force, threats of force, physical restraint, or threats of physical restraint," "by means of the abuse or threatened abuse of law or legal process," or "by means of any scheme, plan, or pattern intended to cause" the victim to believe that "serious harm or physical restraint" would result if the victim did not perform such labor.  Similarly, a Complaint alleging a involuntary servitude in violation of 18 U.S.C. § 1584 must sufficiently state that Defendants Mustafa and Atallah obtained such labor or induced such servitude by actions that would lead Plaintiff to believe that "serious harm or physical restraint" would result if she did not perform such labor or continue in such condition. 18 U.S.C. § 1584(a); TVPA 103(5)(B), Pub. L. No. 106-386, 114 Stat. 1464. Because Plaintiff has not set forth facts that satisfy this requisite threshold of "serious harm," Counts II and III should be dismissed.

In her Opposition, Plaintiff attempts to characterize various allegations in her Complaint as demonstrative of "a scheme, plan or pattern" by the Defendants to compel Plaintiff into continuing in forced labor. Plaintiff's Opposition to Motion to Dismiss ("Pl.'s Opp.") 12.  As a

3

preliminary matter, it is noteworthy that Plaintiff's Opposition did not refute Defendants Mustafa and Atallah's contention that the Complaint fails to set forth any allegations of express or implied threats by the Defendants or subjection to legal coercion. While Plaintiff's Opposition makes vague reference to "the threats…inflicted on Ms. Lagayan," (Pl.'s Opp. 14), she failed to specifically identify any such threats in her Complaint.  Rather, Plaintiff unsoundly argues that the existence of a "scheme, plan or pattern" to compel Plaintiff's continued employment can simply be inferred from the Complaint.

Specifically, Plaintiff asserts that Defendants Mustafa and Atallah carried out this alleged scheme by confiscating her passport, deferring payment of her wages and requiring her to work long hours, restricting her movement, and warning her not to speak with others.  Pl.'s Opp. 12-13. These allegations are insufficient to induce a reasonable belief that serious harm would result if Plaintiff did not comply with the Defendants' requests, and many of these allegations are either inconsistent with or undermined by other facts set forth in Plaintiff's Complaint.

Plaintiff's allegation that Defendants Mustafa and Atallah retained her passport during the period in which she worked in their home is legally insufficient to cause a reasonable person in Plaintiff's position to believe that she would suffer substantial harm if she did not continue with her work. An employer's withholding of their employee's passport – without more invidious action – merely constitutes a "house rule" that Plaintiff was expected to abide by while living and working at the Defendants home. *See Muchira v. Al-Rawaf*, No. 1:14-CV-770 AJT/JFA, 2015 WL 1787144 at *6 (E.D. Va. Apr. 15, 2015).

Plaintiff's assertion that she is entitled to "the opportunity to pursue discovery" on the basis that *Muchira* was permitted to proceed to the summary judgment stage is unavailing here. The *Muchira* court denied the defendants' motion to dismiss in that case based on its finding that

the plaintiff's allegations sufficiently stated a plausible claim for relief. In that case, the plaintiff had set forth specific allegations that tied the conduct of the defendants to her belief that she would suffer substantial harm if she did not provide such labor. *See* Pl.'s Opp. Ex. B, Br. Supp. Mot. Dismiss at 19-21, *Muchira*, No. 1:14-CV-770-AJT-JFA (Aug. 15, 2014), ECF No. 16. By contrast, in the instant case, Plaintiff does not allege that Defendants Mustafa and Atallah's specific actions induced her to believe that she would suffer serious harm. To the contrary, Plaintiff alleged that she "was afraid to violate Defendants' rules *because of her experience in Jordan*, where she was returned to Defendant Lama when she tried to complain about her treatment." Compl. ¶ 49 (emphasis added). She further concedes that Defendants Mustafa and Atallah never told her or implied to her that she would suffer serious harm, stating that "[s]he did not know precisely what would happen if she violated the rules[.]" *Id.* Even assuming that Plaintiff somehow perceived the rules as "threats," as she contends, the allegations in the Complaint do not provide any reasonable basis of fear or coercion on the part of Defendants Mustafa and Atallah.

In her Opposition, Plaintiff attempts to justify at length how the imposition of "house rules," such as Defendants allegedly holding onto Plaintiff's passport and instructing her not to speak with other Filipinos, could possibly induce the requisite fear of serious harm on the basis of Plaintiff's lack of education and negative experiences with her former employer. As discussed above, Plaintiff does not allege that Defendants Mustafa and Atallah had any role in developing these factors that gave rise to any such fear. The alleged facts do not give rise to an inference that the Defendants specifically imposed such rules with the intent of inducing Plaintiff to fear serious harm. Furthermore, the Complaint does not indicate that the Defendants knowingly took advantage of Plaintiff's specific circumstances, or ever "'[intended] to cause the victim to

believe that she would suffer serious harm if she did not continue to work.'" *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 524-25 (D. Md. 2014) (quoting *Garcia v. Curtright,* No. 6:11-06407-HO, 2012 WL 1831865, at *4 (D. Or. May 17, 2012)).  Therefore, even if Plaintiff did somehow hold a belief that she would suffer harm if she attempted to leave the Defendants' employment, the notion that Defendants intended Plaintiff to hold this belief cannot be inferred from the threadbare facts.

Plaintiff relies on her allegations that Defendants Mustafa and Atallah failed to pay her wages and required her to work long hours, claiming that the Defendants did so to increase her dependence on them. Pl.'s Opp. 12. While these allegations may be indicative of an underlying employment dispute, they do not give rise to a reasonable inference that Plaintiff's purported belief that she somehow feared "serious harm or physical restraint" would result if the she did not perform such labor.[2]

Plaintiff's assertion that a scheme, plan or pattern may be inferred from Defendants' alleged restriction of her movements also fails. As noted in Defendant's Motion to Dismiss, the allegations contained in her complaint are rife with contradictions on this point.  For example, while Plaintiff claims she was prohibited from talking to anyone outside the Defendants' household, this allegation is contradicted by her allegations that she contacted her family in the Philippines once a month, left the Defendants' home regularly to go grocery shopping and attend services at the mosque, and was able to access the house phone to call Ms. Maulana. Compl. ¶¶ 46, 47, 54.  Plaintiff's assertion that neither she nor any other guest could *exit* the apartment

---

[2] Plaintiff refers to this failure to pay wages as "the most brazenly manipulative of the acts" in furtherance of their alleged scheme. Pl.'s Opp. 13. This assertion indicates that the employment issues raised in this case are substantially more prevalent than Plaintiff's conclusory allegations concerning forced labor and involuntary servitude.

6

building where Defendants resided without a key card (Compl. ¶ 48) is so dubious that the court need not accept it as true. *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (dismissal warranted "if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional'") (citations omitted). Furthermore, this allegation is contradicted by the fact that she was able to exit the building during her "escape." Compl. ¶ 55.

Because Plaintiff has failed to allege acts by the Defendants that could reasonably constitute a scheme, plan or pattern intended to induce Plaintiff to remain in their employment, both Counts II and III for forced labor and involuntary servitude must be dismissed.[3]

## II. Counts I, IV, and V Must be Dismissed for Failure to Sufficiently Allege a Predicate Violation under the TVPA.

As previously discussed in Defendants' Memorandum in Support of their Motion to Dismiss, Plaintiff's claims under 18 U.S.C. §§ 1590 (Count I), 1592 (Count IV), and 1593A (Count V) TVPA are dependent on the survival of Plaintiff's claims that Defendants violated Section 1584 (Count III), Section 1589 (Count II), or other predicate offenses under the TVPA that are not pled. Def.'s MTD Mem. 15-17. Plaintiff does not dispute that Counts I, IV, and V require her to have adequately pled one of the underlying predicate TVPA violations to survive the motion to dismiss. Pl.'s Opp. 17-19. Therefore, if the Court dismisses Counts II and III of

---

[3] To the extent Count III of Plaintiff's Complaint asserts a claim for involuntary servitude based on an implied cause of action under the Thirteenth Amendment, that claim must be dismissed. As Defendants noted in their Motion to Dismiss, "courts in this Circuit have consistently held that there is no private right of action under the Thirteenth Amendment." Def.'s Memorandum in Support of their Motion to Dismiss ("MTD Mem.") 13 (quoting *Doe v. Siddig*, 810 F. Supp. 2d 127, 135 (D.D.C. 2011)). Plaintiff's involuntary servitude claims therefore must be prosecuted via a statutory remedy, and so Count III of the Complaint should be read only to raise a claim for a violation of 18 U.S.C. § 1584 which, for reasons discussed *supra*, fail to state a claim upon which relief may be granted. Plaintiff does not dispute that a standalone claim for an implied of cause of action under the Thirteenth Amendment must be dismissed for failure to state a claim, and concedes that the only actionable claim is one under Section 1584. Pl.'s Opp. 17 (stating that Plaintiff's claim under the Thirteenth Amendment is pled through Section 1584).

Plaintiff's Complaint, it must also dismiss Counts I, IV, and V. *See Muchira*, 2015 WL 1787144, at \*8 n.27.

Furthermore, Count I of Plaintiff's Complaint alleging a violation of Section 1590 must also be dismissed, because Plaintiff fails to allege any role Defendants Mustafa and Atallah played in the recruitment, harboring, or transportation of the Plaintiff. Plaintiff's claim for violation of Section 1590 is dependent upon the existence of a conspiracy between Defendant Lama and the Defendants Mustafa and Atallah, because the allegations directed toward Defendants Mustafa and Atallah do not suggest that they played any substantive role in Plaintiff's recruitment and transport from Jordan. However, as discussed in Section III, *infra*, Plaintiff has not adequately alleged a *prima facie* case for civil conspiracy.

In light of her failure to establish Defendant Mustafa's and Atallah's vicarious liability on the basis of a civil conspiracy, Plaintiff is limited to establishing a Section 1590 violation based upon the few facts she has alleged specifically as to Defendants Mustafa and Atallah. In her Opposition, Plaintiff contends that Defendant Mustafa physically transported Plaintiff by taking possession of her passport in Dubai and retaining it as he physically transported Plaintiff to his home. Pl's Opp. 18. This attempt to salvage her claim under Section 1590 is unavailing.

The Complaint does not allege that Defendants Mustafa and Atallah played a role in Plaintiff's initial decision to travel to the United States. Plaintiff alleges that Defendant Mustafa's first interaction with Plaintiff was in Dubai, where Plaintiff had already flown from Jordan with the express purpose of traveling with him back to the United States.

While Plaintiff contends that Defendant Mustafa transported her into the United States by "exercising control over her person by withholding her passport, foreclosing the possibility that she could escape from him," Pl.'s Opp. 18, the Complaint does not suggest that Plaintiff had any

8

desire to escape, requested to keep her passport in her possession, or ever told Defendant Mustafa that she did not want to travel to and work for him in the United States. On the contrary, although Plaintiff alleges that she initially told Defendant Lama that she refused to travel to the United States, by the time she met Defendant Mustafa in Dubai, she had already flown, alone with her passport in hand, from Jordan to Dubai. Comp. ¶ 37. The reasonable inference to be drawn from Plaintiff's decision to meet up with Defendant Mustafa in the Dubai airport, after traveling there alone while in possession of her passport, is that Plaintiff had decided at that point that she wanted to travel to the United States. Thus, Defendant Mustafa's alleged retention of Plaintiff's passport during the flight did not constitute an exercise of control, as there was no need for him to display any such authority. Despite Plaintiff's assertions in her Opposition that the Defendant's actions prevented the possibility of escape, the reasonable inference from the facts alleged in the Complaint is that Plaintiff Defendant Lama's instructions and accompanied Defendant Mustafa back to America without any compulsion on his part. She had already embarked on this trip to the United States, without Defendant Mustafa's involvement.

Since Plaintiff's complaint fails to adequately set forth a predicate offense under Sections 1584 and 1589 of the TVPA and also does not allege that Defendants Mustafa and Atallah played any meaningful role in Plaintiff's trip to the United States, Count I should be dismissed.

**III.    Plaintiff's Two Conspiracy Claims – Counts VI and IX – Must be Dismissed for Failure to State a Claim.**

Plaintiff has asserted two conspiracy counts against the three Defendants – civil conspiracy (Count IX) and a conspiracy to deprive her of her civil rights in violation of 42 U.S.C. § 1985(3) (Count VI). As with the trafficking claims, Plaintiff's conspiracy claims are based on conclusory allegations that are insufficient to state a claim upon which relief can be granted, and therefore must be dismissed.

### A. Plaintiff Has Failed to Adequately Plead the Existence of an Agreement between the Defendants to Participate in an Unlawful Act.

A fundamental requirement of any conspiracy claim is the existence of an underlying agreement. *Graves v. United States*, 961 F.Supp. 314, 320 (D.D.C. 1997). To state a claim for civil conspiracy, "a plaintiff must set forth more than just conclusory allegations of [the] agreement," *Brady v. Livingood*, 360 F.Supp.2d 94, 104 (D.D.C. 2004), and must "allege an event, conversation, or document showing that there was an agreement among the alleged conspirators." *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 42 (D.D.C. 2013).

In her Opposition, Plaintiff asserts that she has pled that the Defendants entered into an agreement to traffic her into the United States and subject her to involuntary servitude or forced labor,[4] citing to Paragraphs 115-116 of her Complaint. Pl.'s Opp. 20. These allegations are no more than a "formulaic recitation of the elements of a cause of action" that fail to meet the pleading standard of Rule 8 of the Federal Rules. *See Twombly*, 550 U.S. at 555. None of the basic elements noted in *Geier* showing an agreement have been pled.

Plaintiff then further argues that Paragraphs 38-40 of her Complaint raise an inference that there was an agreement between Defendant Lama and Defendants Mustafa and Atallah to traffic Plaintiff into the United States and subject her to involuntary servitude. Pl.'s Opp. 20.

---

[4] In her Opposition, Plaintiff asserts for the first time that "Defendants [Mustafa and Atallah] entered into an agreement among themselves and with Defendant Lama to … subject [Plaintiff] to … *forced labor*." Pl.'s Opp. 20 (emphasis added). In the two conspiracy counts of her Complaint, Plaintiff asserts that the Defendants conspired as to "illegal trafficking of Plaintiff into the United States and subjecting her to illegal involuntary servitude," and does not allege that the Defendants conspired to subject Plaintiff to "forced labor." (Compl. ¶¶ 95, 115). Plaintiff cannot raise this new conspiracy claim for the first time in her Opposition brief. Regardless, the Complaint does not sufficiently allege an agreement between the Defendants to subject Plaintiff to forced labor.

Specifically, Plaintiff refers to her allegations that "Defendant Mustafa met her in Dubai where she had flown on a flight she was directed to by Defendant Lama," "Defendant Mustafa confiscated her passport in Dubai and took her into the United States;" and Defendant Mustafa told Plaintiff that "he would pay Plaintiff at the same rate Defendant Lama had plus a little more." Pl.'s Opp. 20 (citing Compl. ¶¶ 38-40).

While the Court must liberally construe the Complaint in favor of Plaintiff and grant her the benefit of all inferences, it is insufficient to plead "mere 'parallel conduct that could just as well be an independent action.'" *Acosta Orellana*, 711 F. Supp. 2d at 114 (quoting *Twombly*, 550 U.S. at 557). Even assuming the allegations in the Complaint are true, these allegations "could just as easily be the result of their independent actions," which is insufficient to state a claim for relief under *Iqbal* and *Twombly*. *Acosta Orellana*, 711 F. Supp. 2d at 114. The only communications that can be reasonably inferred between Defendant Lama and Defendant Mustafa are that Defendant Lama and Defendant Mustafa coordinated the dates, times, and locations of Plaintiff's travel, and that Defendant Lama told Defendant Mustafa how much she paid Plaintiff.

Plaintiff does not allege that either she or Defendant Lama ever told Defendants Mustafa and Atallah that Plaintiff did not want to work for them in the United States. Nor does Plaintiff allege that Defendants Mustafa and Atallah ever recruited her or transported her from Jordan. Plaintiff alleges that she first met Defendant Mustafa at the airport in Dubai in November 2012, after she flew alone, with her passport in hand, from Jordan. (Compl. ¶ 38.) No inference can be drawn from the facts alleged that there was ever an agreement between Defendant Lama and Defendants Mustafa and Atallah to transport Plaintiff from Jordan to the United States against her will. Thus, even assuming the allegations in the Complaint to be true, these allegations to not

11

permit an inference that there was ever a plan or a meeting of the minds among the Defendants to traffic Plaintiff into the United States.

Additionally, Plaintiff's allegation that Defendant Mustafa told her that "he would pay Plaintiff at the same rate Defendant Lama had plus a little more" (Compl. ¶ 38), suggests only that Defendant Lama had, at some point in time, told Defendant Mustafa what she paid Plaintiff. Without further allegations of a conversation showing there was an agreement among the Defendants to commit an unlawful act, it cannot be reasonably inferred that this communication about what Defendant Lama paid Plaintiff in Jordan was part of a scheme or agreement between Defendants to subject Plaintiff to involuntary servitude or forced labor in the United States. Plaintiff's conclusory allegations of an agreement between Defendant Lama and Defendants Mustafa and Atallah do not cross the line from possibility to plausibility, as required by *Iqbal* and *Twombly*.

Plaintiff also alleges that Paragraphs 41-52 of her Complaint raise a reasonable inference that there was an agreement between all three Defendants to subject Plaintiff to involuntary servitude and forced labor. Pl.'s Opp. 20. However, Defendant Lama is not referenced once in these allegations, and without further allegations of a conversation showing there was so much as a single conversation between Defendant Lama and Defendants Mustafa and Atallah as to the terms and conditions of Plaintiff's alleged employment in the United States, it cannot be reasonably inferred from these allegations that there was ever an agreement between Defendants Lama and Defendants Mustafa.

The Complaint is also devoid of any allegations that Defendants Mustafa and Atallah entered into an agreement among themselves to traffic Plaintiff into the United States and subject her to involuntary servitude or forced labor. Nor does the Complaint allege that any discussions

or acts demonstrating such an agreement ever occurred. The absence of any such allegations regarding a preconceived plan between Defendants Mustafa and Atallah are fatal to Plaintiff's conspiracy claims.

Because Plaintiff fails to allege any facts from which the Court could reasonably infer that there was any agreement between the Defendants to commit an unlawful action, or to commit a lawful act by unlawful means, Plaintiff's claims for civil conspiracy (Count IX) and a violation of 42 U.S.C. § 1985(3) (Count IV) must be dismissed.

### B. Plaintiff's Conspiracy Claims Must be Dismissed for Failure to Sufficiently Plead the Elements of the Underlying Tort Claims.

Civil conspiracy is not an independently actionable claim, but requires the performance of an underlying unlawful act. *Bush v. Butler*, 531 F. Supp. 2d 63 (D.D.C. 2007). Here, Plaintiff alleges that Defendants conspired to illegally traffic Plaintiff into the United States and subject her to illegal involuntary servitude. Compl. ¶¶ 95, 115. Therefore, her conspiracy claims are dependent on the survival of Plaintiff's claims for illegal trafficking (Count I) and involuntary servitude (Count III). Plaintiff does not dispute that Plaintiff's conspiracy claims require Plaintiff to have adequately pled one of the underlying tort claims to survive the motion to dismiss. Pl.'s Opp. 20-21. Therefore, if the Court dismisses Counts I and III of Plaintiff's Complaint, it must also dismiss Counts VI and IX.

### C. Plaintiff's Section 1985(3) Claim Must Be Dismissed for Failure to Sufficiently Allege a Racial or Class-Based Animus.

To state a claim upon which relief may be granted under 42 U.S.C. § 1985(3), Plaintiff must allege sufficient facts for the Court to reasonably confer that there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). This additional element requiring the

existence invidiously discriminatory animus as the motivation for the conspiracy "is to be read narrowly to avoid converting Section 1985 into general federal tort law." *McCreary v. Heath*, No. CIV.A. 04-0623 PLF, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005).

Plaintiff has done no more than set forth conclusory allegations that Defendants Mustafa and Atallah's actions were somehow motivated by anti-Filipino animus. There are no allegations in the Complaint that any of the Defendants had any interest, motivation, intention, discussion, or agreement with respect to Plaintiff *because of* her race or national origin.

In her Opposition, Plaintiff points to the single allegation that "Defendants specifically instructed Ms. Lagayan that she was not to talk to other Filipinos" as the basis for her assertion that Defendant Mustafa's and Atallah's alleged conspiratorial actions were motivated by such animus. Pl.'s Opp. 21 (citing Compl. ¶ 49). This single allegation does not "'nudge [her] claims' of invidious discrimination 'across the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). Even assuming this allegation as true, this does not indicate that there was an agreement to treat Plaintiff in any certain way *because* of her national origin. There is no description of how Plaitniff's race or national origin was a basis or reason for the alleged conspiracy. Plaintiff has not bridged the gap between the factual allegations in her Complaint and her conclusory assertion that the conspiracy was somehow *motivated by* this bias. Therefore, the Court must dismiss Count VI of the Complaint for failure to sufficiently allege that Defendants Mustafa and Atallah were somehow motivated by racial or otherwise class-based discriminatory animus.

## IV. Count XII of Plaintiff's Complaint Alleging Fraudulent Inducement Must be Dismissed for Failure to State a Claim.

The facts set forth in Plaintiff's complaint – even if accepted as true – do not adequately allege the making of any statements by the Defendants that satisfy the elements for fraudulent

misrepresentation. Two of the three alleged statements were made by Defendant Lama and are not even attributable to Defendants Mustafa and Atallah. The only misrepresentation for which Defendants would be directly responsible involved an alleged promise by Defendant Mustafa to pay Plaintiff wages. As discussed herein, Count XII cannot survive Defendants' Motion to Dismiss on the basis of this statement because the facts alleged in the complaint do not indicate that the statement, when made, was false or material in inducing Plaintiff to travel to the United States.

> **A.** **Because Plaintiff Failed to Sufficiently State a Claim for Civil Conspiracy, She Cannot Hold Defendants Mustafa and Atallah Liable for the Alleged Misrepresentations of Defendant Lama.**

Plaintiff attempts to hold Defendants Mustafa and Atallah liable for the alleged misrepresentations of Defendant Lama to on the basis of civil conspiracy. However, as detailed in Section III, *supra*, the Complaint does not adequately set forth a claim for conspiracy. As a result, Defendant Lama's alleged misrepresentations "that Ms. Lagayan's work in the United States would be in service to Defendant Lama and that her work in the United States would not exceed the length of her original contract, prior to Ms. Lagayan's departure from Jordan," (Pl.'s Opp. 23), cannot be attributed to Defendants Mustafa and Atallah. Because Plaintiff's claim for misrepresentation against the Defendants on the basis of the aforementioned statements is dependent upon sufficiently alleging the existence of a conspiracy, which the Complaint fails to do so, Defendants Mustafa and Atallah cannot be held liable for the alleged untruthfulness of Defendant Lama.

> **B.** **Defendant Mustafa's Alleged Promise to Pay Plaintiff for Future Work Does Not Constitute an Actionable Misrepresentation.**

Because Defendant Mustafa's promise to pay Plaintiff for her work constituted a promise as to future events, Plaintiff must sufficiently allege specific facts indicating that "the promise

15

was made without the intent to perform, or that the promisor had knowledge that the events would not occur." *Bennett v. Kiggins,* 377 A.2d 57, 61 (D.C. 1977).  Plaintiff's Complaint does not contain sufficient allegations through which this Court may infer that Defendant Mustafa made the alleged misrepresentation intending that future performance would not occur.

 In her Opposition, Plaintiff argues that the Court may infer fraudulent intent on the part of the Defendants by their delaying payment of Plaintiff's wages, until eventually proposing "that they would pay her what she was owed when they returned to Jordan." Pl.'s Opp. 24 (quoting Compl. ¶ 51). While Plaintiff suggests that these delays could be characterized as a pattern of misrepresentation that demonstrate Defendant Mustafa's deceptive intention in making such promises to pay, the facts alleged do not support such an inference. Although the Defendants' alleged delays in paying Plaintiff could *possibly* have reflected intent not to perform upon the promise of payment, a sufficient pleading must present "more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Moreover, "[w]here more likely explanations than those alleged by the plaintiff exist, the Court should be wary of finding that the plaintiff's allegations have sufficiently nudged the claims into the realm of plausibility." *Morrow v. United States*, 723 F.Supp.2d 71, 77 (D.D.C. 2010) (citing *Iqbal*, 556 U.S. at 683). It is noteworthy that the Complaint does not allege that Defendants Mustafa and Atallah outright refused to pay Plaintiff, but rather repeatedly made assurances of future payment, demonstrating an intent to fulfill the alleged promise Defendant Mustafa made upon first meeting Plaintiff.

    **C.    Plaintiff Fails to Adequately Allege that Defendant Mustafa's Promise was Material in Inducing Her to Travel to America.**

Plaintiff's Complaint also sufficiently allege that Defendant Mustafa's promise was material in inducing her to travel to the United States. In her Opposition, Plaintiff asserts that "it

16

would be reasonable to infer that Defendant Mustafa's statement, regarding payment for the work, would also influence Ms. Lagayan's decision." Pl.'s Opp. 25. This position is plainly contradicted by the facts alleged in the Complaint, which state that Plaintiff adamantly opposed traveling to the United States to work for Defendant Mustafa. Compl. ¶ 34 ("Defendant Lama asked Plaintiff if she wanted to work for Defendant Lama's brother in the United States…each time Plaintiff refused"). However, Plaintiff did so because she "felt she was required to do so" and "believed herself to be contractually obliged to work." Compl. ¶¶ 37, 71. Additionally, Plaintiff had already started her journey from Jordan to the United States before Defendant Mustafa ever made any alleged statement regarding her pay. Compl. ¶ 38.

Furthermore, Plaintiff's allegations that "[i]t was only through lies that Defendants tricked Plaintiff into coming to the United States," and that "Plaintiff refused to come to the United States and work for Defendant Mustafa when asked by Defendant Lama" are irreconcilable with the alleged facts indicating that Plaintiff relented to Defendant Lama's demands because she felt she had no other choice. Compl. ¶ 129. "Because the court does not accept as true self-contradictory factual allegations and does not make favorable inferences that are unsupported by facts set out in the complaint," *Amore ex rel. Estates of Amore v. Accor*, 529 F.Supp.2d 85, 94 (D.D.C. 2008), Plaintiff's attempts to establish materiality through such facts are unavailing as they are clearly at odds with the majority of the allegations contained in the complaint.

In light of the allegations of misconduct and oppression by Defendant Lama and Plaintiff's underlying resistance toward traveling to America, the only reasonable inference that can be drawn is that Plaintiff relented to Defendant Lama's demands due to her belief that she had no choice in the matter and was bound to obey Defendant Lama's orders, with no reference

to any conduct at the time by Defendants Mustafa and Atallah. Compl. ¶ 37. Having repeatedly alleged that Plaintiff had no desire to work in the United States and would not have done so if it were not for the alleged oppression she suffered while working for Defendant Lama, Plaintiff's contention that Defendant Mustafa's promise of pay influenced her decision to travel to the United States is unconvincing.

Because Plaintiff allegedly travelled to the United States under the impression that she could not refuse Defendant Lama's own orders, Defendant Mustafa's alleged later misrepresentation regarding wages would not have influenced her conduct, and were not allegedly stated until she had already embarked on her travel to the United States. Plaintiff's fraudulent inducement claim should therefore be dismissed as to Defendants Mustafa and Atallah, since it cannot reasonably be inferred that Defendant Mustafa's alleged promise of payment constituted an actual misrepresentation, or that the promise materially induced Plaintiff to travel to the United States and work for Defendants Mustafa and Atallah.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their previously-filed Memorandum in Support, Defendants Mustafa and Atallah respectfully request that the Court dismiss Counts I–VI, Count IX, Count XII, and Count XIII of Plaintiff's Complaint against them in their entirety, and grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____/s/_____
Seth C. Berenzweig, D.C. Bar No. 435391
Berenzweig Leonard, LLP
8300 Greensboro Drive, Suite 1250
McLean, Virginia 22102
(703) 760-0402 (telephone)
(703) 462-8674 (facsimile)
sberenzweig@berenzweiglaw.com
*Counsel for Mustafa Odeh and Sama Atallah*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 3, 2016, a true copy of the foregoing motion was electronically filed with the Clerk of the Court using the CM/ECF system which gives notice to the following counsel of record:

Jonathan Ference-Burke (D.C. Bar #1001179)
ROPES & GRAY LLP
2099 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 508-4600
Facsimile: (202) 508-4650
jonathan.ference-burke@ropesgray.com

Joshua S. Levy (Massachusetts Bar #563017)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
joshua.levy@ropesgray.com
*Pro Hac Vice*

-and-

Martin J. Crisp (New York Bar #4230347)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
martin.crisp@ropesgray.com
*Pro Hac Vice*

*Attorneys for Plaintiff Fattima U. Lagayan*

                                                                                /s/_____
                                                          Seth C. Berenzweig, Esq.
                                                          *Counsel for Defendants Mustafa Odeh*
                                                          *and Sama Atallah*